### No. 2,620.

THE PEOPLE OF THE STATE OF CALIFORNIA *ex. rel.* JO HAMILTON, ATTORNEY-GENERAL, PETITIONER, *v.* B. F. WASHINGTON, L. L. BULLOCK, AND RODMOND GIBBONS, TIDE LAND COMMISSIONERS, RESPONDENTS.

STATUTORY CONSTRUCTION.—SALE OF SALT MARSH AND TIDE LANDS.—PAYMENT OF INSTALLMENTS.—In passing the Act of March 30th, 1868, "to survey and dispose of certain salt marsh and tide lands belonging to the State of California," it was the intention of the Legislature to provide for the payment of the deferred installments, by requiring the payment of twenty-five per cent. of the whole purchase price within the first year and a like amount in each of the two following years.

IDEM.—The stipulation in the receipt to be given by the Commissioners to the purchaser, for the amount of the first payment of twenty-five per

cent. to the effect, "that if within one, two or three years thereafter he pays the additional seventy-five per cent. * * * he shall receive a deed from the State," was inserted for the purpose of giving the purchaser the privilege of paying the whole balance in a shorter period of time than three years, should he desire to do so.

IDEM.—UNPAID INSTALLMENTS.—It was the duty of the Tide Land Commissioners to treat lands, upon which the first installment of the deferred payments remained unpaid for a longer period than one year, as "lands unsold by the State," and to proceed to resell the same.

APPLICATION to the Supreme Court in the exercise of original jurisdiction for a writ of mandamus.

The facts are stated in the opinion.

*Jo Hamilton,* Attorney-General, for Petitioner.

*First*—The scope of power given the Tide land Commissioners and the State Board is to *sell* and *dispose* of the lands known as tide lands. This power of disposal follows the land as a necessary consequence after the first purchaser has forfeited. The lands are then *unsold,* and remain the property of the State just as they did before the sale.

These lands are placed in charge of this Commission to sell and dispose of, and their power of sale and disposal is only restricted as to the mode in the Act specified, and certainly contemplates a final sale, and a resale as often as the purchaser forfeits his purchase money. The lands are, by the failure to pay, considered *unsold* and remain still to be *sold.*

It must borne in mind that the Legislature was legislating upon the subject of trade common in land, the sale and transfer of property. In so doing, the use of language common in trade and commerce is to be understood as intended by them to have the same interpretation as the terms used by traders in and about the trading in this kind of property. The vendor who sells his commodity for one fourth in cash, and the balance in one, two and three years thereafter, is understood to mean that he sells upon four payments, one at the time of the sale being, one fourth of the whole sum, one fourth at the end of one, and one

fourth at the end of two, and the other fourth at the end of three years from the sale. That is the contract; the seller agrees to these terms by selling, the buyer agrees to them by buying, the contract is mutual, both parties have assented, and, in the language of the concluding part of Section 7, "in case of non-compliance with the provisions of this Act (the contract) on the part of the purchaser by non-payment of either or any installment afterward, all the money paid by him shall be forfeited and the property considered unsold by the State."

The language used in the Act, is further explained by the language just quoted, "The non-payment of either or any installment" afterward, works the forfeiture of all the money paid. It would not be possible to construe the statute in any other way than the one claimed by petitioner, to make the language quoted mean anything. I therefore assume, that it was intended that the lands were to be unsold if the first annual payment from the day of sale was not made, and that it was not made is conceded.

*Second*—The tide lands are not common lands, or those which the citizen has a *right* to purchase or acquire by the ordinary course of trade. The citizen is *permitted* by the State to purchase this character of property. The sovereign who owns it and holds it for a certain use and purpose, agrees to part with it upon certain express conditions, and says, at the time of the offer to dispose, that if these conditions are not complied with, the property is unsold.

The State reserves the right, if the terms are not complied with, of canceling and annulling the trade. It would be a novel doctrine if the citizen, dealing with the sovereign by permission and upon positive and direct terms, could enlarge or change those terms at his option, thereby making a new and different contract, and binding the sovereign to conditions to which it had never assented, and against which it had expressed a positive assent.

*Third*—The respondents are public servants. They have assumed a certain trust imposed by the terms of this Act. They receive the emoluments, and, by accepting the office,

agree to discharge the duties, of the office of Commissioners. The sale and disposal of the tide lands is their duty, and it does not lie in their mouths, assuming to discharge certain duties under the Act, to question their power to do them or to raise any question as to their propriety. (*Dunphy et al.* v. *Haight*, July Term, 1868, not reported; Statute concerning mandamus, Hittell's Digest, p. 777, Sec. 469.)

*D. Wm. Douthitt,* for Respondents.

The principal question before the Court, is upon the construction of the Act of the Legislature, entitled " An Act to survey and dispose of certain salt marsh and tide lands belonging to the State of California. Approved March 30th, 1868."

Have the purchasers, under the Act, the option left them to pay the seventy-five per cent. remaining unpaid to the State after the expiration of three years from the date of the purchase, or are they compelled to pay the said seventy-five per cent. in three equal annual installments of twenty-five per cent. each, and, in case of failure to pay either of said installments, do they forfeit the amount before paid, and the land, to the State ?

Section 6 provides terms of sale, viz: " Cash in gold coin, twenty-five per cent. payable on the day of sale to the Commissioners, and seventy-five per cent. payable in one, two and three years thereafter to the State Treasurer, at Sacramento. The Commissioners shall receipt to each purchaser for the amount of his payment of twenty-five per cent., stipulating that if, in one, two or three years, he pays the additional seventy-five per cent., together with legal interest, to the State Treasurer, he shall receive a deed," etc.

Section 7 provides: " Upon the surrender to him ( the Treasurer) of the Commissioners' receipt for the amount paid to said Commissioners, and the payment to him of the additional seventy-five per cent. with legal interest, as hereinbefore provided in this Act, he shall deliver the deed to the grantee; and in case of non-compliance with the provisions of this Act on the part of the purchaser, by the non-

payment of either or any installment aforesaid, all the money paid by him shall be forfeited, and the property considered as unsold by the State."

In Sec. 5, of the same Act, it is provided that where any settler was, on the first of January, A. D. 1868, in the *bona fide* possession of a lot, and had improvements thereon of a certain character named in this Act, that the Commissioners should appraise the value of said lot or lots, and then the statute provides that said settler may purchase said lot at the appraised value, by paying twenty-five per cent. of the appraised value at the time of the purchase, and the residue of such appraised value in three equal installments in one, two and three years.

As to this class of purchasers the statute is very plain, and we think that if the framer of the Act intended that the purchasers at public auction should be compelled to pay in the same way, he would certainly have so stated. It seems by this last section, providing for purchasing at appraised value, that the originator or framer of the Act had a very clear understanding of what was necessary to be stated in order to fix a liability upon the purchasers to pay in three equal annual installments, and it seems to us that if it was intended that the persons who purchased at public auction should be compelled to pay in the same way, similar language would have been used. But we think that it was thought that *bona fide* occupants would be favored as to appraisement, and therefore the Act sought to force them to pay in the installments named.

It is not necessary, however, for us to speculate as to why or how the Legislature, or the framer of the law, came to use pointed, plain and unmistakable language in fixing the liability of one class of purchasers, and leaving the same somewhat in doubt as to the other class. If it was intended that the liability should be the same in each case, it certainly should have been stated, and the fact of the terms of sale being so explicitly set out as to purchasers at appraised value, and at the same time leaving the terms of sale somewhat in doubt as to those purchasing at pub-

lic sale, leads us to believe that it was the intention of the framer of the Act, or the Legislature, to fix different terms as applicable to purchasers at public auction from those stated as applicable to purchasers at appraised value.

The first part of Sec. 6 provides for the payment, in one, two and three years, of the remaining seventy-five per cent. to the State Treasurer, but it does not provide that the same shall be paid in three equal annual installments; and the question arises, taking this provision of the law for our guide, what amount was to be paid in one year, what amount in two, and what amount in three. The purchaser under this part of the law, disconnected from the succeeding words, could not be compelled to pay any particular part of the amount at the end of each year. He would not be compelled to pay any specific part of the sum at the end of each year, but could pay any amount he chose, and at any time, provided that the last payment made was within or at the end of three years, and, provided, that all sums paid, in whatever amount, or whatever time paid, in the aggregate footed up seventy-five per cent. remaining unpaid, with interest.

But, immediately following this part of the law, it is further provided, that the Commissioners shall stipulate that if in one, two *or* three years he (the purchaser) pays the additional seventy-five per cent., together with legal interest, he shall receive a deed, etc.

Now admit that the disjunctive *or* was a misprint, still we are left in the dark, as before stated, as to what amount should be paid at the end of one, two or three years.

But the word *or*, in our judgment, settles the question, that the framer of the law at least (from what motive we know not) intended that if the remaining seventy-five per cent., with interest, was paid at the end of three years, the title should be vested in the purchaser.

Section 7 provides that "in case of non-compliance with the provisions of this Act on the part of the purchaser, by the non-payment of either, or any, installment aforesaid, all the money shall be forfeited, etc." This section does not

aid the petitioner in his view of the construction of the law, because it merely provides, *that if the payments are not made as provided by this* Act, then the land and money shall be forfeited, etc.   The question arises, what is provided by this Act?   The statement made "by the non-payment of *either or any* installment aforesaid," does not assist us in construing the Act, because the first installment of twenty-five per cent., and the last of seventy-five per cent., would be two installments to be paid after the purchase was made at the sale, so the language *"either"* installment would harmonize with our view and construction of the law.

It was the duty of the Commissioners to stipulate with the purchaser, that if he paid the remaining seventy-five per cent. in one, two *or* three years he should receive a deed. This stipulation became the contract between the parties, and is binding on the State.   If the Commissioners failed to stipulate in the manner set forth, then they failed to conform to the provision of the law, and the purchaser thereby can lose no rights which he may have had under this provision of the law.

We would call the attention of the Court to certain familiar rules of construction.   The question in construing statutes is, what was the intention of the Legislature ?   And this must be gathered, not from any evidence outside of the Act itself or the words used therein, but must be collected from the words employed in the Act.   (Dwarris on Statutes, pages 560 and 561.)   Effect ought to be given to the intention and object of the framers, but it must be such an intention as the Legislature have used fit words to express. (Id. 561 and 562.)   Let the legal consequences be what they may, effect cannot be given to an intention not expressed. (Id. 573.)   The form of the receipt and the stipulation provided for, "that if in one, two *or* three years the purchaser pays the additional seventy-five per cent.," is positive and unequivocal, and unless there are other definite expressions or clauses controlling this provision, by showing clearly that the payments were intended to be different, the said form of receipt and stipulation must control.

Section 7 has this language: "Upon the surrender of the Commissioners' receipt for the amount paid said Commissioners, and the payment of the additional seventy-five per cent., etc." The Commissioners were authorized to do no more than receipt for the first payment of twenty-five per cent. If the payments were to be made in installments as claimed, to whom were such payments to be made? Not to the Commissioners, and if to the Treasurer, he was not to deliver the deed until the surrender of the Commissioners' receipt, and the payment of seventy-five per cent. No authority is given him to demand or receive any less sum than seventy-five per cent. This view of the statute can be reconciled with the other provisions of the law; the other would do violence to certain plain provisions fixing the terms of sale, and thereby work injustice to the purchaser, at least. When a statute assumes to specify the effects of a certain provision, we must presume that all the effects intended by the law-maker are stated. (*Perkins* v. *Thornburg*, 10 Cal. 191, and cases there cited.) The Court will presume that all the effects intended by the law-maker are stated. (Id. 189.) In construing statutes, the rule is to start out with the assumption that some effect is to be given to every provision of the law to be construed. (31 Cal. 412.) Force and meaning should be given to every part, and Courts will not, except when the language is so vague and indefinite as to be wholly destitute of meaning, reject any portion. (3 Cal. 471.)

WALLACE, J., delivered the opinion of the Court, CROCKETT, J., TEMPLE, J., and RHODES, C. J., concurring:

This is an application made by the People against the Board of Tide Land Commissioners, created under the Act of March 30, 1868, praying a writ of mandamus to be directed to the Board, commanding them to proceed with the resale of a portion of the salt marsh and tide lands mentioned in said Act, pursuant to certain provisions in the Act contained.

It appears that portions of these lands have been sold to certain persons at public auction, as directed by the fifth section of the Act, and that upon the day of sale the twenty-five per cent. cash payment required by the statute was duly made.

It is claimed, upon the part of the People, that an installment of another twenty-five per cent. of the purchase money became due to the State upon the 9th day of June last, and has not been paid, and that, consequently, it has become the duty of the Board to treat the lands, upon the purchase of which the last mentioned installment remains unpaid, as "lands unsold by the State," and to proceed to re-sell the same. It is admitted by the Board, in their answer filed here, that they do so refuse to re-sell these lands because, they say, they have doubt as to their power and duty in the premises.

An argument has been filed here on behalf of certain purchasers of portions of these lands, who are alleged to have made default in the payment of the first deferred installment of purchase money, in which it is claimed that, under a proper construction of the Act, these lands cannot be considered as "unsold by the State," except upon the failure of the purchaser to pay the entire remaining seventy-five per cent. of the purchase money for the space of three whole years next after making the purchase.

The sixth section of the Act declares that the terms of sale shall be twenty-five per cent. payable on the day of sale, "and seventy-five per cent. payable in one, two and three years thereafter, to the State Treasurer, at Sacramento." We think that there cannot be much difficulty in determining the meaning of this provision. It much resembles the usual terms of the ordinary contracts of sale of land between private persons, in which deferred installments of the purchase money are provided for, and whether occurring in a statute or private contract, the obvious intent is to provide for the payment of twenty-five per cent. of the whole purchase price within the first year, and a like amount in each of the two following years. Stress is, how-

ever, laid upon the circumstance that the Act further pro-
vides that, upon receiving the cash payment of twenty-five
per cent., the Board shall give to the purchaser a receipt,
in which a stipulation is to be inserted, "that if, within one,
two or three years thereafter, he pays the additional
seventy-five per cent. he shall receive a deed from the
State," etc.

We think, however, that there is not even an apparent
conflict between these provisions. The portion of the Act
first recited had exacted from the purchaser the annual
payment of not less than thirty-three and one third per
cent. of the amount of purchase money deferred, and,
standing alone, there would have been no privilege given to
the purchaser to pay the whole balance of the purchase
money in a shorter period of time than three years, should he
even desire to do so.

It seems to have occurred to the Legislature that a pur-
chaser might desire (for the purpose of stopping the
accumulation of interest, or because it might, in his opin-
ion, be of advantage to him to immediately obtain a deed)
to pay the whole amount of the purchase money in a less
period of time than three years; and we think that the pro-
vision last recited accomplishes that purpose.

We are of opinion, therefore, that the purchaser may, at
his option, delay the payments, provided he annually pay
not less than one third of the entire unpaid balance with
interest, or he may, if he choose, pay the whole balance
at any time within three years; and, thereupon, if he comply
with the other requirements of the Act, he may right-
fully demand that the Treasurer immediately deliver him
the deed of the Commissioners.

We think that the Board have no discretion to refuse to
make the re-sale, and it results that the writ must issue as
prayed for, and it is so ordered.

SPRAGUE, J., expressed no opinion.